We have four cases on for argument this morning. Before we get started, I want to thank Judge Paul Grimm from the District of Maryland for joining us today and serving on our court. So the court will call the case of United States v. Dowell. And Mr. Bostic, whenever you're ready. Judge Bostic May I please the court? Judge Grimm, I must say, I practiced in the Western District of Virginia and we have a former Master Judge, Judge Walker. So if I refer to you as him, you look exactly like him. Judge Grimm Well, that's all right. He might be offended. I am not. Judge Bostic He's a great looking guy. Before I even get started, is there any particular issue you want me to address first? Is there any one in particular that you particularly hit you and you wanted to address? Or I can just start in the beginning. Judge Walker You can go ahead and get started. Judge Bostic Okay. The one issue, I'm going to jump to the end and then I'm going to go back to the beginning. One issue that really has not been decided and I think is something that's going to be dealt with a lot in the future, particularly considering how much child pornography has become prevalent, is the vulnerable victim enhancement. We are seeing an awful lot of that of the child pornography as a result of the advent of the Internet. Basically in the last 20 years we're dealing with a very new crime. Up until then you had a few, I guess what you would call, smart stores or pornography stores and a little bit of that. As soon as the Internet hit, it just went wildfire and it's all over the world. And that is one of the issues that we're going to be dealing with a lot in the future, is the application of sentencing guidelines concerning child pornography. There's a variety of other enhancements that I'm going to get to just in a few minutes, but dealing specifically with the vulnerable victim enhancement. There is, I'm having to use two different sets of glasses because I don't have an actual set. There is already an enhancement section that applies that deals with 12 and under children. And in that particular section you end up with a two-point enhancement. Then there's also another one under 2G2.1B1A that provides for a four-point enhancement. And those specifically, the guidelines tell you, those are enhancements that are to be applied for 12 and under children. When you move to the vulnerable victim section, which is 3A1.1B1, that particular section actually deals with a vulnerable victim and it deals with a wide variety of different vulnerabilities. If you're dealing with a person who has some type of a mental disability, potentially one of the cases I read dealt with a sleeping female. So those are really talking about a different type of vulnerability. And within 3A, within the commentary, it specifically says you are not to include a vulnerable victim enhancement if you do include the 12 and under enhancement. And that is very specifically written in there. Well, unless there's some other basis for establishing vulnerability, right? And the district court in this case arguably made such a point. The rationale that was used and the rationale that has been used, and really Jenkins is what I would call the seminal case that is being used. Judge Urbanski used it. His rationale was a child that is three years old, and let's just use a range if the sentencing commission were to rewrite these code sections, goes 0 to 3 or 0 to 4, based upon the lack of cognitive ability. That really is what they focused in on, is when you're dealing with a child of three years old is different than a child of ten years old from a cognitive ability standpoint. So the rationale that is used is because the cognitive ability is so limited, the understanding of right and wrong is so limited, and the ability for the child to be manipulated at three years old. That is the rationale Judge Urbanski used. Our rationale is 3A specifically says, do not include it unless there is a vulnerability that is specifically unrelated to age, and that is the particular language that it uses. So if it was related to age plus we had some type of a mental issue going on, or age and we had a sleeping child, then you may have the additional element or the additional information or factual pattern that would allow you to use that vulnerability. And you don't think Judge Urbanski made that distinction here? I think he recognized the distinction. He recognized the distinction with respect to the cognitive ability, and that was his rationale. There was no factual pattern in any of these charges that dealt with the child being asleep or the child having some other mental disability besides purely age. And the Sentencing Commission, had they chosen to add that as an additional enhancement, had two opportunities to do it, either under Chapter 2 where they have the 12 and under, and they could have said, in addition for children 0 to 4, we will add an additional two points. Or they could have simply removed the language under the vulnerability. Assuming we agree with you that the Sentencing Commission has already taken this into account and that enhancement should not apply, how is this not harmless error when the sentence is 960 months? I have a real hard time getting around that. And that kind of goes back to the Eighth Amendment argument, which is kind of where this all began. Any additional questions? I think I've stated everything I needed to. To talk about, perhaps to anticipate the Eighth Amendment, in light of the Cobler decision that came out after the briefing was done here, how do you distinguish this case from that case where a 120-year sentence by the same judge for almost the same offense? Cobbler. Oh, Cobbler. Doesn't that sort of answer the question on the Eighth Amendment for us? My first three arguments, to a large extent, and I will be very frank about this, I'm really trying to preserve this for posterity. Here, and I'll just go ahead and dovetail, all three of my first arguments really are My personal view of where we are on the child pornography sentencing guidelines is much where we were with the crack guidelines and the law back in the 80s. When Congress came in and we had basically a new type of crime, it was something we had had cocaine, we've had drugs before, but we really had never seen anything like that. And looking at the future of where things are going to go, and looking at what my third argument was when we're dealing with the multiple five-point enhancements, there's also a third five-point enhancement, which gives 15-point enhancement for different actions. So our guidelines, in a very brief period of time, have just gone through the roof. I think the highest I've seen is 11,000 months, in excess of 11,000 months. I read Kobler, and that kind of dealt with one of the initial issues, which was the disproportionality and whether or not that actually is applicable when you have a term of years. And, of course, my reading of it is you can use a disproportionality argument on that if it, in fact, does come down to a de facto life. In reading it, I can't make a lot of distinction. I was actually in court and listened to that case when it was argued and have read it thoroughly. And my argument basically is on the Eighth Amendment. I think we've gotten to the point where the numbers that we're looking at are so vastly over the top. When we're talking about crimes that do not involve homicide, do not involve terrorist threats, things of that nature, when you're dealing with the most heinous crimes. And also looking at the Eighth Amendment analysis, looking at what are the punishment ranges for other types of crimes in the Fourth Circuit. And I put in there a schedule, and the highest, what Mr. Dow received, is two and a half times higher than the average for kidnapping and hostage taking, which was the very highest sentencing guideline range. Murder actually was below that. Murder, what Mr. Dow's sentence range is, is three and a half times higher than a sentencing guidelines for murder or the average sentencing guidelines under the Fourth Circuit than there is a couple of other things. But Mr. Dow's was just so disproportionate to what the crime was. We just don't have violence. Really, what we're really dealing with here more is going to be psychological issues dealing with the child going forward. But I would just submit to the court, based upon the fact that we don't have that violent aspect of it, I do believe it is grossly disproportionate to what the punishment was or what the crime was that he committed. And we think it is an Eighth Amendment violation. Having said that, that is what my argument is. Mr. Bostick, do you have anything further? I really don't. The other two arguments, I think, I've already said. We've got some time reserved for rebuttal. Thank you very much. Ms. Healy. Good morning. May it please the Court. Nancy Healy for the United States. Obviously, the government disagrees with Mr. Bostick's arguments. The first thing I would point out about these types of cases is that Congress has already made the determination, as have all the courts, that these are very serious cases. They're egregious cases. They're among the most egregious cases. So when someone tries to compare them to homicide or terrorism, which are both horrendous in their own right, I don't think you can then preclude another type of crime like child sexual exploitation in terms of saying that the sentences are out of whack in any type of way. We would argue that these types of sentences are mandated in this case, and I think your question about Cobbler is correct. Cobbler was, first of all, dispositive on the fact that a proportionality review is not precluded in these types of cases, in terms of years or term of years types of sentences. But they reinforced, it reinforced, the court reinforced the particular supposition that in such cases you still have to establish a gross inference of disproportionality. And that starts with looking at the sentence as opposed to the gravity of the offense. And in this particular case, as the court noted, the defendant's acts were predatory. I want to make sure I have his statement right. Predatory, premeditated, calculated, cold, and heinous. This defendant, Mr. Dowell, not only serially... And repeated with multiple, multiple victims. Yes. So he serially molested a 3-year-old girl who was incapable, and I'll get to the vulnerable victim in a moment, but who was really incapable of distinguishing, was this play, was this person being nice to me, or what was he doing? She could not understand that. He kept it up, and it got to the point where it wasn't just acts that he performed on her that graduated in escalation, but also he ended up trying to get her to do the same acts on her, on him, that he had performed on her. So it was a very calculated and predatory type of act. But he also had another victim. And I believe in his testimony even he made some comment about she wasn't really into it. That was a 5-year-old victim. And the last video, as the court saw, as Judge Urbanski saw, showed him actually pulling down her pants and clearly trying to get a close-up of her genital area, or naked genitals in that particular case. But other than that, too, you then have to look at his other type of crime. He had 70,000 images, or more than 70,000 images, of other depictions of child pornography or child erotica. This was not somebody who was just a one-time offender. This is someone who had been looking for sexually exploitative material for years. And as Dr. Donna Moore had testified, this guy was a pedophile.  In fact, if you assume for the sake of arguments that the offenses against the 3- and the 5-year-old was the first time he actually acted out in contact, here he is in his mid-40s doing this type of offense after having a history of looking at images. So I would suggest to the court that, given the seriousness and the depravity of his particular acts, first of all, he can't establish a gross inference of disproportionality. And I would suggest that the proportionality analysis has to end there. Even if you look at the sentences and go a little further and look at sentences around the country, it is clear that sentences are being imposed at a way above the potential life expectancy of any particular defendant. I think the Falgu case, I believe that may be 11th Circuit, F-A-L-G-O-U-T, I know it's cited, was 11,500 months. I mean, obviously that's well beyond any type of potential life expectancy, and 80 years for this man also is beyond his life expectancy. I did want to make one comment. Mr. Bostic did make a comment about the absence of violence in this particular offense. I would note that there was a fairly recent case, U.S. v. Mosey, M-O-Z-I-E, that's 752 F-3rd, 1271, at page 1290. It's an 11th Circuit 2014 case, and it basically said the absence of violence in these types of crimes are not determinative of the disproportionality issue. Again, everybody has made clear that these are egregious offenses, and perhaps among the most egregious of all criminal offenses, not solely because of what the acts are, but also because of their profound enduring effects on the victims, and I think we have to keep that in mind. I do think the district court in this case was meticulous on making a record. This was a lengthy hearing. It was almost nine hours long, I believe, and the court heard evidence from both sides, heard testimony from both sides, heard extensive arguments from both sides. The issues were all briefed. The court was very concerned about making sure it made an informed decision and made the right decision in this particular case, and the court heard evidence on both sides, argument, and the court came down on the side that the defendant should be sentenced to life imprisonment. He called it life. It was 80 years. I would like to hear about the government's position on this vulnerable victim enhancement because I think that's a weak link for the government, given what the guidelines actually specifically say. And there is a case. I spoke with Mr. Bostic this morning just to make sure he was aware of a Fifth Circuit case that came out subsequent to Jenkins. There was a case in the Fifth Circuit, U.S. v. Ramos, and that's found at 739 Fed Third 250, and it was a Fifth Circuit 2014 case. In that case, it looked at images and depictions of children who were between the ages of 8 to 10 years old, some of whom were tied up in bondage types of situation. In that case, the Fifth Circuit found that it was too much related to the enhancements that were already taken into consideration by the guidelines, that being age and also sadistic and masochistic conduct because the kids were tied up. And those were 8- to 10-year-old minors, though. And what the distinction is here, and I think Judge Urbanski made a really good point of stating he wasn't finding that the vulnerable victim enhancement applied to the 5-year-old, but he did find the vulnerable victim enhancement applied to the 3-year-old. And he took great efforts to explain it wasn't just her age, this was her cognitive abilities, her psychological development. But what was the evidence that distinguished this particular 3-year-old from any other 3-year-old? I mean, the same claim could be made for virtually any 3-year-old, that they have limited cognitive abilities. And that could be. Okay, so where's the evidence that distinguishes this victim from any other? Well, I think the court also made it clear that he had to see, I think he had been reluctant to look at the videos, but there's some clips that were shown during the sentencing hearing that showed the progression of what this defendant had done. And you see a child going, he made it clear that you see a child going from thinking it's play, oh, no, stop doing that. Which is the typical grooming process in any child exploitation case, correct? Not with an older minor. I would submit that older minors, first of all, are educated in a different way about sex at different ages. And the Sentencing Commission could have taken that into account and made distinctions for age and made the, they have 12 and under. They could make it an increased enhancement if it's 5 and under or 3 and under, but they didn't do that and, in fact, said age should not be considered in this vulnerable victim enhancement. I would submit to you that one of the reasons that is likely to have been is that these guidelines are already fairly old. They're dated. I think they were, the most recent substantive revision was probably in 2003, around the time of the PROTECT Act. So the Sentencing Commission has had a decade to change that if they wanted to. That's correct, and as this court may be aware, there were significant hearings that were conducted, I think, at the end of 2012, maybe around then, and I know there was a Sentencing Commission recommendation to Congress for different types of changes on both sides of the equation. But at the time that these were promulgated, there were different patterns of child sexual exploitation. I think that over the years since then, you know, we have seen the ages of minors go down significantly. The level of violence has increased in child pornography offenses or images. So I do think that there may be a difference later. There may be another age-based change at some point, but I think when the guidelines were promulgated, there were fewer toddlers and infants and very young children being sexually abused in the images, and they were a little bit older, and it's been a disturbing trend that we have seen in terms of younger children. I think the court made— My question is more specifically with regard to Judge Urbanski's findings. He made reference repeatedly to the psychological effect, and he made reference to the grooming and how the child went from being disturbed to initiating a conversation about that. And he talked about cognitive ability. Both the Fifth Circuit and the Ninth Circuit, which have looked at this, have acknowledged that there can be a relationship between age and cognitive ability, but if you can show that in the particular facts of that case, it is not the age alone that is a relationship. And they used examples such as a particularly young child that maybe couldn't run as fast or couldn't get away, and they were talking about discrete physical differences that might correlate with age but were distinct from age. And I think my question is what Judge Diaz's question was, was in this particular case, how is it that we can look at the record and distinguish between simply the fact that cognitive ability in a 3-year-old is less than cognitive ability in a 5- or a 9-year-old, and psychological development is different? How can we find some facts in the record that are distinct from the relationship, the nexus, with age alone? And I think it's a great question, but I think the fact that he actually took great efforts to distinguish a 3-year-old from a 5-year-old is dispositive in the government's view because I think he noted that the 3-year-old was vulnerable in ways that older prepubescent minors were not. That's just a function, one could argue, just a function of age. And there's a good question. Would all babies be, perhaps all babies would be unusually vulnerable and merit a vulnerable victim enhancement? I think the Ninth Circuit was probably the most generous because they did not go into too much of a discussion as to the right case as to what would count. I mean, both cases, the Fifth Circuit and the Ninth Circuit, made clear that it had to be very, very young and for other reasons. And I think they were trying in both of those cases or both of those circuits were trying to state a principal reason to adopt an additional enhancement for a very young age. And I think they also, I think it was the Fifth Circuit that said it's going to depend on the particular child. So you might have, I mean, she's at, the 3-year-old, I guess, is at the boundaries of where a toddler becomes not a toddler anymore. But what he viewed in those movies was something where she was just unable to process what the defendant's predatory acts meant, that she looked at it as play. And I don't think you get that with an older prepubescent minor who, as just as normal healthy kids learn about sex and by the time they're pubescent, they certainly have been schooled and perhaps interested in learning more about sex. Well, Ms. Healy, I don't think any of us are suggesting that this enhancement couldn't apply on a particular factual record. At least I am, and it appears Judge Grimm may be as well, concerned about whether this factual record is enough. And I think, as I said before, the court made clear he had to see the movies to decide that enhancement. It was something that was patent to him when he viewed those movies. I don't think he had any problem determining that this, and he saw the movies of the two movies of the 5-year-old girl as well and did not go close to that, found a straight distinction. And it was basically because of the dialogue and what Dowell was doing to this little child and how she was interacting and the progression. And I agree, it is grooming to get someone to break down their inhibitions. That's a classic definition of grooming. But I would suggest to the court that when you have a minor that's that young who doesn't have the capability to say, she shouldn't even know what sex was at that point. That's different from an 8- or 10- or 12-year-old child who knows what, who generally has been educated or has learned in some fashion or another what sex is to some extent. Obviously, differing levels. This, as a 3-year-old child, would have absolutely no idea that this was anything other than this person playing with her. So I do find that there is a principal distinction and that the court was able to make that determination, reasonably made that determination, based on his review of these very graphic movies. And I think it is just clear when you look at that record, he was very careful to distinguish something beyond the fact that she was a 3-year-old. I suppose your fallback is it really doesn't matter in the context of this case. In this case, it would not matter. The court is correct. I mean, the judge made it very clear, regardless of what he determined to be the guidelines range in this case, that this defendant deserved a life sentence. And I think he said it every time he talked about the 3553A factors, he said, because of the nature of the offense, you deserve a life sentence. To protect the public, you deserve a life sentence. And he went and he ticked through all those 3553A factors and made it very clear that that's what he wanted to give them. Obviously, 80 years is not technically a life sentence, but it is for this defendant, as we had discussed in the record in this case. And I think the same harmless error analysis would also go towards the 2-5 point enhancements, because as the court pointed out, it really only made a difference with respect to the transportation charge, because the second 5-point enhancement only comes about in the Child Pornography Trafficking Guideline, 2G2.2, as opposed to 2G2.1. And then added to that, I hadn't even thought about this before, but I read a case the other day, because of the grouping rules, really the transportation count didn't add another 5 points, it added another 1 point. There were 5 points added under the grouping. You don't get the full impact of that other sentencing guideline. So, truly, it was a harmless situation for, I think, for these particular enhancements. However, with respect to that 5-point one, if I may, because I think there's only unpublished case law in this circuit right now, so it's not necessarily controlling. Having reviewed this issue multiple times, I think there's no case law that would suggest that it is inappropriate double counting, from what I can see, and that those two 5-point enhancements were intended to apply cumulatively. The language in the 4B1.5 enhancement says it's to be added, 5 levels are to be added to the offense level that's calculated under either Chapter 2 or Chapter 3. So, one, you have the guidelines not expressly prohibiting the second enhancement, the other 5-point enhancement. Two, you have the explicit language in the guideline itself that says you're to add it to the offense guideline calculation. And three, if you look at the cases, including this Court's decision in Schellenberger, but not only Schellenberger, other cases as well, it's clear that the two 5-point enhancements, while covering the same conduct, clearly, in this case, were designed to address different harms. One's talking about the offense conduct, and the specific offense conduct in this particular case. The other one's talking about concerns about recidivism. So, I don't think there's impermissible double counting, and I don't think there's any case law that would hold, otherwise, at least from my review and my citation of the cases, it appears that they are authorized at the same time. Ms. Healy, I think we understand your position on these matters. Okay. Do you have any questions? All right. Thank you. Thank you very much. Mr. Boston. Very brief rebuttal. Ms. Healy basically stood up here for her entire time frame when it concerned the two-point enhancement, based upon the lack of cognitive ability. The reason for the lack of cognitive ability is due specifically to age. Even when she refers to Judge Urbanski took a lot of time looking at those videos, and after looking at those videos, made the determination that that enhancement applied. The reason that the grooming was even capable of occurring was due to age. There was nothing particular about this particular girl other than age. Age is the only thing that we're dealing with. There was no allegation. There was no evidence ever presented throughout the discovery process or the sentencing proceeding that there was anything other than age. We don't have any other mental disability, any other physical disability. We don't have the S&M. There was a two-point enhancement for S&M, but that was as a result of something that was on one of the videos. No allegations concerning any tying up, anything of that nature. So we don't have anything upon which to base that other than age. So I would ask the court to find the court committed error. Thank you, Mr. Bostic. Thank you, Judge. Mr. Bostic, I note that you are court appointed. On behalf of the court, I want to thank you for taking on this representation, and we could not do our work without lawyers such as yourselves. We're willing to take on these cases, so thank you very much. I also neglected to recognize that there are a number of students in the audience today from Virginia Commonwealth University. We welcome all of you and hope that you find this experience enlightening and educational, and we thank you for being here. We're going to come down and greet counsel and then move on to our next case.
judges: Albert Diaz, Stephanie D. Thacker, Paul W. Grimm